92 P.3d 521

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John DOE, Defendant–Appellant.**

No. 29237.

Supreme Court of Idaho,
Boise, February 2004 Term.

May 25, 2004.

Harrigfeld, Pica & Stoddard, Boise, for appellant. William G. Harrigfeld, argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Lori A. Fleming argued.

SCHROEDER, Justice.

John Doe ("Doe"), a juvenile, was charged with "Disrupting the Educational Process," pursuant to Idaho Code Section 33–512(11).[1] Doe's motion to dismiss was denied by the magistrate court and the district court affirmed. Doe challenges the constitutionality of Idaho Code Section 33–512(11) on the basis of over-breadth and vagueness.

---

1. I.C. § 33–512 provides in pertinent part:

    The board of trustees of each school district shall have the following powers and duties:

    * * * * * *

    11. To prohibit entrance to each schoolhouse or school grounds, to prohibit loitering in schoolhouses or on school grounds and to provide for the removal from each schoolhouse or school grounds of any individual or individuals who disrupt the educational processes or whose presence is detrimental to the morals, health, safety, academic learning or discipline of the pupils. A person who disrupts the educational process or whose presence is detrimental to the morals, health, safety, academic learning or discipline of the pupils or who loiters in schoolhouses or on school grounds, is guilty of a misdemeanor.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the incident giving rise to this case Doe was a ten-year-old elementary student attending the fourth grade. On March 14, 2001, he stood up in class and asked his substitute teacher for a shotgun. When his teacher asked why he needed the shotgun, Doe responded that he wanted to shoot another boy who had been bothering him. Doe was immediately removed from the classroom and interrogated by the police. He was subsequently charged with a violation of Idaho Code § 33–512(11) which makes it a misdemeanor offense for a person to, among other things, disrupt "the educational process." Doe never returned to class and was permanently removed from school.

Doe filed a motion to dismiss on April 30, 2001, alleging that I.C. § 33–512(11) is void for vagueness and that the statute was not intended to apply to the conduct of students. The magistrate court denied the motion to dismiss. Following the denial of his motion to dismiss, Doe entered into a stipulation with the State to take an interlocutory appeal. The magistrate court approved the stipulation. The district court affirmed the decision of the magistrate. This appeal followed.

# II.

## IDAHO CODE SECTION 33–512(11) IS NOT APPLICABLE TO DOE'S CONDUCT

### A. Standard of Review

When reviewing the decision of a district court acting in its appellate capacity over the magistrate division, this Court reviews the magistrate court's decision independently of, but with due regard for, the district court's intermediate appellate decision. *See Swanson v. Swanson*, 134 Idaho 512, 515, 5 P.3d 973, 976 (2000); *Balderson v. Balderson*, 127 Idaho 48, 51, 896 P.2d 956, 959 (1995). This Court will uphold the magistrate court's findings of fact if they are supported by substantial, competent evidence in the record. *Id.* With respect to conclusions of law, this Court exercises free review. *Id.*

The constitutionality of a statute is a question of law over which this Court exercises de novo review. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and "must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). An appellate court is obligated to seek an interpretation of a statute that will uphold its constitutionality. *Cobb*, 132 Idaho at 197, 969 P.2d at 246. In addition, "a statute should not be held void for uncertainty if any practical interpretation can be given it." *Id.* at 197, 969 P.2d at 246.

### B. This Court will not address the constitutional issues on appeal.

Doe challenges the constitutionality of I.C. § 33–512(11) on the basis that it is overbroad and vague. However, when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case. *Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977); *Swensen v. Buildings, Inc.*, 93 Idaho 466, 463 P.2d 932 (1970). The Court has declined to address constitutional issues on appeal when the matter can be determined on statutory grounds. *See e.g. State v. Young*, 122 Idaho 278, 283, 833 P.2d 911, 916 (1992) ("In light of our disposition on statutory grounds, we have no occasion to determine the parameters of the right to appointed counsel at probation revocation proceedings under our state constitution."); *Smith v. Dep't of Employment*, 100 Idaho 520, 521, 602 P.2d 18, 19 (1979) ("We do not reach the state constitutional issue raised by claimant Smith because we conclude that the statute does not bar receipt of unemployment compensation benefits by claimant Smith."). In this case the same principles of judicial restraint weigh against reaching the merits of Doe's constitutional challenges.

■ The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Maidwell,* 137 Idaho 424, 426, 50 P.3d 439, 441 (2002). Where the statutory language is unambiguous, the clearly expressed intent of the legislature must be given effect and there is no occasion for this Court to consider the rules of statutory construction. *Payette River Property Owners Ass'n v. Bd. of County Comm'rs,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). An ordinance is ambiguous where reasonable minds might differ or be uncertain as to its meaning. *Ada County v. Gibson,* 126 Idaho 854, 856, 893 P.2d 801, 803 (Ct.App.1995). However, ambiguity is not established merely because the parties present differing interpretations to the court. *Matter of Permit No. 36-7200,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992). Where the language of an ordinance is ambiguous, courts look to the rules of construction for guidance and may consider the reasonableness of proposed interpretations. *Ada County,* 126 Idaho at 856, 893 P.2d at 803.

■ The statutory language at issue in this case, Idaho Code § 33-512(11), grants the board of trustees of each school district the following powers and duties:

To prohibit entrance to each schoolhouse or school grounds, to prohibit loitering in schoolhouses or on school grounds and to provide for the removal from each schoolhouse or school grounds of any individual or individuals who disrupt the educational processes or whose presence is detrimental to the morals, health, safety, academic learning or discipline of the pupils. A person who disrupts the educational process or whose presence is detrimental to the morals, health, safety, academic learning or discipline of the pupils or who loiters in schoolhouses or on school grounds, is guilty of a misdemeanor.

I.C. § 33-512(11).

■ Doe was criminally charged with "Disrupting the Educational Process" pursuant to I.C. § 33-512(11). However, the Idaho Code lacks a definition of the phrase "disrupts the educational process," and the Court has not addressed the issue in the interpretation of I.C. § 33-512(11). Where,

as here, there is an ambiguity in the statute, the Court will construe the statute to give effect to the legislative intent. *See In re Williamson,* 135 Idaho 452, 455, 19 P.3d 766, 769 (2001). Additionally, where the ambiguity exists as to the elements of or potential sanctions for a crime, this Court will strictly construe the statute in favor of the defendant. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999).

■ In this case the legislative history underlying I.C. § 33-512(11) clearly indicates that its purpose is to provide public school students with a safe learning environment, rather than to subject their conduct to criminal sanctions. I.C. § 33-512 was amended in 1972 to add paragraph eleven, granting the board of trustees of each school district the following powers and duties:

To prohibit entrance to each schoolhouse or school grounds and to provide for the removal from each schoolhouse or school grounds of any individual or individuals who disrupt the educational processes or whose presence is detrimental to the morals, health, safety, academic learning or discipline of the pupils.

1972 Idaho Sess. Laws ch. 9, sec. 1, p. 13. The minutes from the January 17th 1972 meeting of the Education Committee provide the following insight into the legislative intent underlying the 1972 amendment:

*Mr. Kennevick* explained that this bill was drafted after discussions with some school principals in Boise. The schools are having problems with (1) drop-outs coming back (2) persons coming onto the school grounds selling narcotics. As it is now the police can do nothing as there is no law that can keep an individual off of the school ground. This will give the school principals a little bit of power so that they can tell these people they are breaking the law and call the police.

The statutory language of I.C. § 33-512(11) was again amended in 1975 to grant each broad of trustees the power and duty "to prohibit loitering in schoolhouses or on school grounds" and to provide that, "[a] person who disrupts the educational process or whose presence is detrimental to the mor-

als, health, safety, academic learning or discipline of the pupils or who loiters in schoolhouses or on school grounds, is guilty of a misdemeanor." 1975 Idaho Sess. Laws ch. 107, sec. 1, p. 218. The legislative purpose of I.C. § 33–512(11) did not include the punishment of pupils attending the school.

Statutes must "be construed as a whole without separating one provision from another." *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539, 797 P.2d 1385, 1387 (1990) (citations omitted). A reading of I.C. § 33–512(11) as a whole is necessary to determine its proper scope. The first sentence of I.C. § 33–512(11) relates to the (1) entrance (2) loitering and (3) removal of individuals who "disrupt the educational processes or whose presence is detrimental to the morals, health, safety, academic learning or discipline *of the pupils.*" (emphasis added). The second sentence of I.C. § 33–512(11) provides that individuals engaged in the activity proscribed in sentence one are guilty of a misdemeanor. The language of I.C. § 33–512(11) evidences a legislative purpose of protecting, not prosecuting, pupils.

An interpretation of I.C. § 33–512(11) that excludes student misconduct will not undermine the ability of public school officials to address and correct student misconduct. Currently, I.C. § 33–512(6) grants the board of trustees of each school district the following powers and duties:

> To prescribe rules for the disciplining of unruly or insubordinate pupils such rules to be included in a district discipline code adopted by the board of trustees and a summarized version thereof to be provided in writing at the beginning of each school year to the teachers and students in the district in a manner consistent with the student's age, grade and level of academic achievement.

I.C. § 33–512(6). This statutory language provides public school officials with an effective means of disciplining unruly or disruptive pupils in an administrative fashion. In appropriate cases, recourse may also be had through various provisions of the criminal code, e.g. assault, battery. There is little need to interpret I.C. § 33–512(11) as provid-

ing public school officials additional authority to pursue criminal sanctions against disruptive or detrimental public school students. Accordingly, an interpretation of I.C. § 33–512(11) that criminalizes student misconduct is not necessary to carry out its purpose or to avoid rendering the statute a nullity. *See Hecla Mining Co. v. Idaho State Tax Comm'n*, 108 Idaho 147, 151, 697 P.2d 1161, 1165 (1985) (stating that, "it is incumbent upon a court to give a statute an interpretation which will not render it a nullity.") (citation omitted).

There has been no suggestion in this case that Doe actually intended to harm his classmate or that he believed that his substitute teacher had a shotgun, and if so, that the teacher would lend it to Doe for the purpose of shooting another student. Doe was criminally charged based solely upon his momentary disruption of the "educational process." This could be handled administratively through I.C. § 33–512(6) rather than criminally through I.C. § 33–512(11). I.C. § 33–512(6), grants each board of trustees the power and duty "[t]o prescribe rules for the disciplining of unruly or insubordinate pupils." I.C. § 33–512(11), on the other hand, was intended to protect students by subjecting individuals to criminal sanctions who are disruptive to their "educational process" or detrimental to their "morals, health, safety, academic learning or discipline." As previously noted, if the conduct rises to the level necessitating criminal sanctions, there are numerous criminal statutes that may be utilized without casting a net so large that its reach cannot be defined reasonably.

The Court disfavors constructions that would lead to absurd or unreasonably harsh results. *Lawless v. Davis*, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977). An interpretation of I.C. § 33–512(11) that criminalizes student misconduct would likely lead to unreasonably harsh results. The interpretation that I.C. § 33–512(11) was not intended to apply to public school students achieves the legislative purpose of the statute and avoids the harsh consequences of criminalizing virtually all student or teacher misconduct. Under the expansive definition sponsored by the State, a

teacher who was unprepared on a particular day, thereby disrupting the educational process would be guilty of a misdemeanor. A student who talked in class or asked too many questions would also be guilty of a misdemeanor. The list of applications, if the State's view is accepted, goes on to unending lengths of often ridiculous, sometimes humorous, speculative examples, e.g. criminalization of flatulence in class. The legislature had a defined problem it sought to solve. Its purpose was not to create a draconian criminal hammer to use on everybody on school property who might in some way disrupt the educational process.

In light of the resolution of this issue on statutory grounds, this Court need not reach the merits of Doe's argument that I.C. § 33–512(11) is facially overbroad and void for vagueness. *See Swensen*, 93 Idaho at 469, 463 P.2d at 935 (court will not rule on constitutional issue unless necessary to resolve the case). The decision of the district court and magistrate are reversed and the case is remanded for entry of an order dismissing the charge.

### III.

### CONCLUSION

The magistrate's order denying Doe's motion to dismiss is reversed. The case is remanded for entry of an order dismissing the charge.

Chief Justice TROUT, and Justices KIDWELL, EISMANN and BURDICK concur.