# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 42554 & 42936

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Opinion No. 11 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 18, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| VERNON CRAIG PELLAND, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Judgment of conviction for grand theft by possession, affirmed; order relinquishing jurisdiction, affirmed.

Sara B. Thomas, State Appellate Public Defender; Kimberly E. Smith, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Chief Judge

In these consolidated cases, Vernon Craig Pelland appeals from his judgment of conviction for grand theft by possession and from the district court's order relinquishing jurisdiction. Pelland argues there was insufficient evidence for a jury to find him guilty and that the district court erred in relinquishing jurisdiction. For the reasons set forth below, we affirm.

1

# I.

# FACTS AND PROCEDURE

The state charged Pelland with one count of grand theft by possession. I.C. §§ 18-2403(1), 18-2407(1)(b), and 18-2409. A jury found Pelland guilty.[1] The district court sentenced Pelland to a unified term of ten years, with a minimum period of confinement of two years. However, the district court retained jurisdiction and sent Pelland to participate in the rider program. Following completion of Pelland's rider, the district court relinquished jurisdiction. Pelland appeals.

# II.

# ANALYSIS

## A. Sufficiency of the Evidence

On appeal, Pelland argues that there was insufficient evidence to support the jury's finding of guilt. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The evidence at trial demonstrated that, when Pelland was arrested on a misdemeanor warrant, he was in possession of a grocery cart containing suitcases and a bicycle. An inventory of the contents of one of the suitcases revealed a box containing numerous sheets of printed money order stock, an instruction sheet for money order vendors showing how to properly

---

[1] Pelland was also found guilty of one count of petit theft by possession. However, following the jury's verdict, the district court dismissed this conviction for lack of evidence pursuant to I.C.R. 48.

complete the money orders, and identification cards for persons other than Pelland. The money order stock consisted of printed money order forms from a well-known money order company, including the name of the issuer, the bank through which the money orders would be paid, a routing number, and security features. There were blank spaces for the name of the payee, the name and address of the purchaser, and the amount of the money order. An employee of the issuer testified that, while valid money orders require a specific printer, the blank forms could be used to issue money orders that would probably not be recognized as being fraudulent by the person accepting them for payment. Pelland was found guilty of grand theft by possession. Idaho Code Section 18-2407(1)(b)(3) states that a person is guilty of grand theft if the stolen property consists of a check, draft, order for the payment of money upon any bank; a check, draft, or order account number; a financial transaction card; or a financial transaction card account number as those terms are defined in I.C. § 18-3122. Consistent with the statute, the jury was instructed that, in order to find Pelland guilty of grand theft by possession, the state must prove that he possessed a "check, draft or order for the payment of money upon any bank." Pelland argues that the evidence at trial was insufficient to sustain a jury finding that the money order forms possessed by Pelland were money orders or orders for the payment of money upon any bank.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous

statute an interpretation which will not render it a nullity. *Id*. Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

By definition, a money order is an order for the payment of money. Some money orders, including those at issue in this case, are, on their face, orders for the payment of money upon a bank.[2] Thus, the money order forms alone provide evidence that they are orders for the payment of money upon a bank. Furthermore, the director of global security for the money order issuer testified that the issuer contracted with banks to process money orders and distribute the funds. He testified that the routing and transit numbers on the face of a money order would allow a money order to "make its way through the banking system" when the money order was used as a means of payment. He also testified that the money orders could be cashed at a bank or another business. Together, the face of the money orders and the testimony of the security director provided substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving beyond a reasonable doubt that the money order forms were orders for the payment of money.

Pelland also argues that, because the money order forms were not completed (the purchaser, payee, and amount were not filled in), they could not have been checks, drafts or orders for the payment of money under the plain language of I.C. § 18-2407(1)(b)(3). We first note that nothing in the plain language of the statute requires that the check, draft, or order be a completed document or that it be written for a certain amount or any amount. Idaho Code Section 18-2407(1)(b)(1) provides that a person is guilty of grand theft when value of the property taken exceeds $1000. Subsections of the statute deal with the theft of property which, by its nature, may not have an intrinsic value greater than $1000 but which the legislature has, nonetheless, seen fit to define as grand theft. *See* I.C. § 18-2407(1)(b)(2) (theft of certain public

---

[2] While not dispositive to this case, we note that I.C. § 28-3-104(6) states that an instrument may be a check even though it is described on its face by another term, such as "money order." The official comment explains that money orders are sold both by banks and nonbanks. Money orders issued and sold by banks are treated as checks. Other money orders, such as the ones in question here, vary in form and their form dictates how they are treated under Article 3 of the U.C.C. We need not decide whether the money orders in question here are checks, drafts, or another kind of instrument. On their face, they are orders for payment of money upon a bank.

4

records); I.C. § 18-2407(1)(b)(4) (property taken from the person of another); I.C. § 18-2407(1)(b)(5) (property taken by extortion); I.C. § 18-2407(1)(b)(6) (theft of firearms); I.C. § 18-2407(1)(b)(7) (theft or killing of animals exceeding $150 in value); I.C. § 18-2407(1)(b)(8) and (9) (certain aggregated or serial thefts); and I.C. § 18-2407(1)(b)(10) (theft of anhydrous ammonia). Included in the list of such thefts is I.C. § 18-2407(1)(b)(3), theft of checks, drafts, orders for the payment of money upon a bank, account numbers and financial transaction cards. Plainly, the legislature recognized that the value of these items was not in the paper or plastic, but in the potential value to a thief and the potential loss to the victim. When read in its entirety, along with the remainder of the statute, I.C. § 18-2407(1)(b)(3) unambiguously provides that theft of a check, draft or order for the payment of money upon any bank is grand theft, regardless of whether the name of the purchaser and payee or the dollar amount are filled in or printed on the document. Thus, a reasonable trier of fact could have found that the prosecution sustained its burden of proof that Pelland possessed checks, drafts, or orders for the payment of money upon a bank beyond a reasonable doubt.

Pelland also argues that the state failed to present evidence that the money orders were stolen. Idaho Code Section 18-2403(4) provides that a person commits theft when he or she possesses stolen property the person knows to have been stolen or under such circumstances as would reasonably induce him or her to believe the property was stolen. The jury instruction on this issue required that the state prove that the money orders were "in fact stolen." At trial, the director of global security for the money order issuer testified that the issuer's agent had reported the money orders as lost or stolen. He also testified that the blank money order forms were provided only to agents of the issuer and that they should only be in the possession of authorized agents or employees. According to his testimony, there was no lawful means Pelland or his girlfriend[3] could have been in possession of the money orders. Pelland's statements to the police indicated that Pelland knew he should not have been in possession of the money orders and he told the officer that he was mad at his girlfriend when he found out "what she did." Pelland testified at trial that he knew his girlfriend should not have possessed the money orders and that he contacted his girlfriend's parents about the situation. Considering this evidence in a light

---

[3]    It was alleged that Pelland's girlfriend found the money orders at a grocery store which had closed.

most favorable to the prosecution, a reasonable trier of fact could have found beyond a reasonable doubt that the prosecution sustained its burden of proving that the money orders were stolen.

**B.      Relinquishment of Jurisdiction**

The district court sentenced Pelland to a unified term of ten years, with a minimum period of confinement of two years. The district court retained jurisdiction and Pelland was sent to participate in the rider program. After Pelland completed his rider, the district court relinquished jurisdiction. On appeal, Pelland claims that the district court erred by refusing to grant probation.

We note that the decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct. App. 1990). The record in this case shows that the district court properly considered the information before it and determined that probation was not appropriate. We hold that Pelland has failed to show that the district court abused its discretion in relinquishing jurisdiction.

### III.
### CONCLUSION

Pelland has not shown that there was insufficient evidence to support his conviction for grand theft by possession of stolen property. In addition, Pellend has not shown that the district court erred in relinquishing jurisdiction. Therefore, Pelland's judgment of conviction for grand theft by possession and the district court's order relinquishing jurisidiction are affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.